```
_____ FILED            _____ RECEIVED
_____ ENTERED          _____ SERVED ON
            COUNSEL/PARTIES OF RECORD

         MAR  -  3  2010

      CLERK US DISTRICT COURT
        DISTRICT OF NEVADA
BY:                        DEPUTY
```

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

RICHARD SCHWEICKERT, an individual,
MARY LAHREN, an individual,

      Plaintiffs,

      v.

NEVADA SYSTEM OF HIGHER
EDUCATION, a political subdivision of the
State of Nevada, JOHN FREDERICK, an
individual, JANNET VREELAND, an
individual, MARY DUGAN, an individual,
GINA TEMPEL, an individual,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

3:06-cv-0531-RCJ-RAM

**ORDER**

    Currently before the Court is Defendants Nevada System of Higher Education, John Frederick, Jannet Vreeland, Mary Dugan and Gina Tempel's (collectively referred to herein as "Defendants") Motion for Summary Judgment (#46) filed on February 17, 2009.  Plaintiffs Richard Schweickert and Mary Lahren (collectively referred to herein as "Plaintiffs") filed a Motion to Strike Defendants' Motion for Summary Judgment (#69) on October 16, 2009. Defendants filed an Opposition to Plaintiffs' Motion to Strike (#75) on November 03, 2009, and Plaintiffs filed a Reply (#76) on November 17, 2005.  Plaintiffs also filed an Opposition to Defendants' Motion for Summary Judgment (#78) on December 16, 2009, and Defendants filed a Reply (#82) on January 11, 2010.

    The Court heard oral argument on the motions on February 19, 2010.

1

**BACKGROUND**

2      Plaintiffs were both employed in the Department of Geological Sciences and

3  Engineering at the University of Nevada, Reno ("UNR"), an institution within Nevada System

4  of Higher Education ("NSHE").  Plaintiff Richard Schweickert ("Schweickert") is a tenured

5  Professor of Geology at UNR.  (Motion for Summary Judgment (#46) at 2).  Plaintiff Mary

6  Lahren ("Lahren") was formerly a Research Associate Professor of Geology at UNR.  Id.

7      In 2002, Lahren filed a sexual harassment charge with the EEOC and the University's

8  Affirmative Action Office against the Chair of her Department.   (Complaint (#1) at 1).

9  Schweickert participated in the investigation of the claim and supported Lahren in the

10  mediation.   Id.   Through an EEOC mediator, NSHE and Lahren reached a settlement

11  agreement on May 14, 2002. Id. at 2. The settlement agreement provided that in exchange

12  for $60,000, Lahren agreed to leave her UNR position and to never apply for a position as an

13  employee with UNR. Id. In addition, Lahren agreed that she would not institute further actions

14  against NSHE for any claims arising out of her employment with NSHE.

15      Despite the settlement agreement, in 2003, Plaintiffs filed a complaint against NSHE

16  and   several   of   its   employees   in   federal   court   (Case   3:03-cv-00631-ECR-

17  VPC)("Lahren/Schweickert I").  In Lahren/Schweickert I, the Plaintiffs asserted causes of

18  action based on retaliation, violation of the equal protection clause, invalidity of the settlement

19  agreement and its release, and interference with prospective contractual relations and

20  economic advantage.  While that case was pending, Plaintiffs filed a second case in the

21  Second Judicial District Court of the State of Nevada ("Lahren/Schweickert II").  In the state

22  court case, Plaintiffs alleged claims of retaliation and violation of their First and Fourteenth

23  Amendment rights as well as various state law claims.  Finally, on October 9, 2006, Plaintiffs

24  filed this action again asserting claims of retaliation and violation of their constitutional rights.[1]

25  ────────────

26      [1] In addition to the foregoing, Schweickert is involved in a federal court case against NSHE in
which Schweickert challenged certain changes to the procedures for reviewing faculty evaluations

27  similar to those he alleged in this lawsuit. See Carr v. NSHE, Case No.: 3:06-cv-00197-LDG-RAM
(referred to herein as "Hussein V"). That case involved a claim that the change to the faculty evaluation

28  process violated the First Amendment and the Due Process Clause.  In that case, the Court granted
NSHE's motion for judgment on the pleadings, or in the alternate for summary judgment, on the grounds

1    On December 27, 2005, the federal court entered an order in Lahren/Schweickert I in

2  which it granted the Defendants' motion for summary judgment as to all of Lahren's claims

3  except one claim for retaliation based on an alleged negative job reference. (Opposition to

4  Plaintiffs' Motion for Summary Judgment (#17) at Exhibit A). The court held that Lahren had

5  provided no evidence to overcome summary judgment on any of her claims for retaliation

6  except one. Id. Moreover, the court held that the settlement agreement Lahren entered into

7  after her discrimination charge was clear and unambiguous. Id. Further, the court held that

8  there was no evidence that Lahren entered into the agreement under coercion or duress. Id.

9  On that same date, the court also entered an order granting Defendants' motion for summary

10  judgment as to all of Schweickert's claims. Id. at Exhibit B. In that order, the court held that

11  Schweickert failed to provide evidence to support his claims for retaliation, violation of his First

12  Amendment rights, and violation of the equal protection clause. Id. This order was affirmed

13  by the Ninth Circuit in an unpublished decision. See Lahren et al. v. University and

14  Community College System of Nevada, et al., 2008 WL 4280180 (9th Cir. 2008 unpublished

15  memorandum).

16    On May 4, 2007, the state court entered an order in Lahren/Schweickert II. Id. at

17  Exhibit C. In that order, the state court held that the Defendants were entitled to judgment on

18  the pleadings as to all of Plaintiffs' federal claims on the basis that such claims had been

19  adjudicated on the merits in Lahren/Schweickert I. Id. The court also found Plaintiffs' state

20  law claims to be without merit. Id. That order was affirmed by the Nevada Supreme Court

21  except for one defamation cause of action which that court remanded and is now pending in

22  the state district court. See Lahren et al. v. NSHE, et al., Case No.: 49846 (Order filed Sept.

23  18, 2008).

24    In this case, because of the prior litigation, Defendants filed an Amended Answer to

25  Complaint (#13) in which they listed as affirmative defenses the doctrines of res judicata and

26

27  that "plaintiffs have not offered any law suggesting that they have a due process right to any specific type of review procedure," and "plaintiffs have not offered any law suggesting that the due process afforded

28  by peer review violated constitutional requirements." See Order (#98) in Case No.: 3:06-cv-00197-LDG-RAM.

3

1  collateral estoppel based on Lahren/Schweickert I and II.  Plaintiffs moved for summary

2  judgment on these defenses on the grounds that res judicata did not apply because the claims

3  for relief were based on conduct which occurred in 2006 - after the two previous lawsuits had

4  been filed.  The Court entered an Order (#25) granting in part and denying in part Plaintiffs'

5  motion.  In the Order, the Court noted that all three cases involve causes of action related to

6  Lahren's 2002 sexual harassment charge - specifically claims for unlawful retaliation.  Despite

7  this, the Court held that any allegations of retaliatory conduct by Defendants which occurred

8  during or after 2006 were new claims for purposes of res judicata.  As such, those claims were

9  allowed to proceed.  However, the Court noted that Plaintiffs continued to challenge the

10  legality of the settlement agreement, arguing that it was entered into "under fraud, coercion

11  and duress." (Order (#25) at 6).  The Court held that any issue regarding the validity of the

12  settlement agreement was subject to res judicata because the agreement was upheld in

13  Lahren/Schweickert I.

14        Based on the Court's previous Order (#25), the remaining claims for relief relate to an

15  alleged civil conspiracy by Defendants to retaliate against Plaintiffs for their involvement in

16  prosecuting the sexual harassment charge in 2002.  In this regard, Schweickert alleges that

17  he was retaliated against during an evaluation process in 2006. According to the Complaint,

18  Schweickert "received an evaluation in teaching that had excellent in teaching and service, and

19  commendable in research." (Complaint (#1) at 3).  "On March 31, 2006, he sought to grieve

20  his overall evaluation of commendable."  Id.  However, when Schweickert attempted to "file

21  a grievance through the faculty senate appeals committee" this opportunity was denied and

22  he "had to proceed through the peer review process."  Id.  According to Schweickert, "[t]his

23  adversely diminished [his] ability to challenge evaluations that violated his rights, resulting in

24  economic and general damages."[2]  Id.

25  _____

26  [2] Plaintiffs note that Schweickert "filed an action as part of a class of faculty members pursuing
    academic freedom against the Board of Regents of NSHE addressing and challenging the peer review
27  process for grievances concerning performance evaluations of faculty." (Complaint (#1) at 4).  That
    case, Hussein V, involved the allegation that NSHE's change in the grievance procedure to a peer review
28  process violated the faculty's Constitutional and contractual rights.  See (Complaint (#1) in Case No.:
    3:06-cv-00197-LDG-RAM).  As noted in the foregoing, the district court entered an order granting

4

1    Plaintiffs also allege that Defendants denied Schweickert "the ability to retain Lahren

2  as a consultant" at a 2006 geology Field Camp. Id. at 5. According to Plaintiffs, Defendants

3  changed the procedures for hiring consultants specifically to target Lahren and deny her a right

4  to work at the Field Camp in retaliation for her sexual harassment charge. Id. As a result,

5  Plaintiffs assert claims for interference with prospective economic advantage and contractual

6  relationships. In addition, based on the foregoing allegations, Plaintiffs allege that Lahren had

7  "a liberty interest in pursuing her occupation" which Defendants interfered with in violation of

8  due process. Id. at 9.

9    Finally, Plaintiffs assert a claim under 42 U.S.C. § 1985. According to Plaintiffs, they

10  have been threatened and intimidated as parties and witnesses to litigation. Id. at 8.

11    Based on the foregoing, Plaintiffs argue that they are "entitled to declaratory relief"

12  stating that "their rights have been so violated," and also "an injunction enjoining Defendants"

13  from interfering with "Lahren's future services to the Field Camp and to pay her for her

14  services rendered at the Field Camp." Id. at 7. Plaintiffs are also seeking damages from the

15  individual defendants pursuant to 42 U.S.C. § 1983 "because Defendants acted in their official

16  capacities under color of State law in violating the aforementioned constitutional rights." Id.

17    On February 17, 2009, Defendants filed a Motion for Summary Judgment (#46).

18  Attached to their motion were 46 exhibits including portions of deposition transcripts, email

19  communications, letters, prior court orders, and other documents. In response, Plaintiffs filed

20  an Emergency Motion to Strike Defendants' Motion for Summary Judgment (#69) alleging that

21  the motion should be stricken because the exhibits had not been authenticated.[3] The motion

22  to strike remains pending. Because the admission of these exhibits alter the outcome of the

23  summary judgment motion, the Court will first determine the merits of the motion to strike.

24  _____

25  NSHE summary judgment in that case on September 25, 2008. Because an order has now been filed
    terminating that action on the merits, Plaintiffs have moved for summary judgment on Schweickert's

26  claim based on the doctrine of res judicata.

27    [3] At the time Plaintiffs filed their emergency motion to strike, they were not represented by
    counsel. Plaintiffs had terminated their initial attorney, Jeffrey A. Dickerson, because of "irreconcilable

28  conflicts between clients and lawyer." (Emergency Motion for an Order Approving Termination of
    Counsel (#59) at 2). At a status conference, the Court granted Plaintiffs an extension of time to respond
    to the motion for summary judgment in order to find new counsel.

**DISCUSSION**

**I. Motion to Strike**

According to Plaintiffs, they are seeking an order from the Court "striking Defendants' exhibits in their motion for summary judgment . . . and for an order denying that motion." (Emergency Motion to Strike Defendants' Motion for Summary Judgment (#69) at 1). Plaintiffs state that the "basis for striking the exhibits is the fact that they are not admissible because of the lack of authentication," and Defendants' motion "is thus not supported by admissible evidence."[4]  Id.   In response, Defendants argue that Plaintiffs' motion  to strike "rests exclusively on technical grounds" which Defendants request to correct with leave of Court. (Defendants' Response to Plaintiffs' Emergency Motion to Strike (#75) at 7).  As to the deposition documents, Defendants request leave of Court to file the deposition cover page and reporter's certification to authenticate those exhibits.  Second, Defendants request leave of Court to file an affidavit by the Board of Regents Chief Executive Officer authenticating excerpts from the Board of Regents Handbook.  Finally, Defendants argue that the remaining exhibits are deemed authenticated because they are documents which were provided by Plaintiffs in discovery.[5]  Id. at 8.

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002)(citing Fed. R. Civ. P. 56(e)). "Authentication is a 'condition precedent to admissibility,' and this condition is satisfied by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" Orr, 285 F.3d at 773 (citing Fed. R. Evid. 901(a)). The Ninth Circuit has repeatedly held "that unauthenticated documents cannot be considered in a motion for summary judgment." Orr, 285 F.3d at 773.

---

[4]  Plaintiffs reiterate this argument in their Opposition to Defendants' Motion for Summary Judgment (#78).  In their opposition, Plaintiffs assert that the motion for summary judgment must be denied because it "is not supported by any competent evidence." Id. at 6.

[5]  These include various emails which Defendants argue can be authenticated under Fed. R. Evid. 901(b)(4) because the email addresses in the documents identify the name of the sender and receiver. "In addition, the contents of the emails authenticate them as being exchanges between plaintiffs' counsel Mr. Dickerson, and UNR General Counsel, Ms. Dugan." Id. at 9.

1          "In a summary judgment motion, documents authenticated through personal knowledge

2 must be 'attached to an affidavit that meets the requirements of [Fed. R. Civ. P.] 56(e) and the

3 affiant must be a person through whom the exhibits could be admitted into evidence.'" Id. at

4 773-74 (quoting Canada v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir. 1987)).   In

5 addition, a proper foundation for authentication "can rest on any manner permitted by Federal

6 Rule of Evidence 901(b) or 902." Id. at 774.

7          As noted in the foregoing, the documents attached to Defendants' motion for summary

8 judgment include deposition transcripts, prior court orders, letters, emails, and portions of a

9 University handbook.   Defendants concede that some of these exhibits were not properly

10 authenticated; consequently, they now seek leave of Court to authenticate the documents.

11 **A. Deposition Extracts**

12          "A deposition or an extract therefrom is authenticated in a motion for summary

13 judgment when it identifies the names of the deponent and the action and includes the

14 reporter's certification that the deposition is a true record of the testimony of the deponent."

15 Orr, 285 F.3d at 774 (citing Fed. R. Evid. 901(b)).   Ordinarily, this is accomplished by

16 "attaching the cover page of the deposition and the reporter's certification to every deposition

17 extract submitted." Id. "It is insufficient for a party to submit, without more, an affidavit from

18 her counsel identifying the names of the deponent, the reporter and the action and stating that

19 the deposition is a 'true and correct copy.'" Id. Such an affidavit "lacks foundation even if the

20 affiant-counsel were present at the deposition." Id.

21          In their motion for summary judgment, Defendants did not properly authenticate any of

22 the exhibits attached as deposition extracts. Although some of the exhibits included the name

23 of the deponent at the top of the page, none included the reporter's certification or the name

24 of the action. In order to correct this, Defendants now seek leave of Court to submit the cover

25 pages for each deposition, as well as the reporter's certification. As such, attached to their

26 opposition to the motion to strike are Exhibits A-22 through A-27 which include the cover page

27 and certification for the deposition extracts relied on in the motion for summary judgment.

28          In order to determine this action on the merits, the Court grants Defendants' leave to

submit the proper authentication for the deposition extracts.  Thus, the following exhibits can be properly considered by the Court in ruling on the motion for summary judgment: Exhibits C, E, F, G, I, J, K, M, N, O, S, U, V, W, X, Y, Z, A-1, A-2, A-3, A-4, A-5, A-6, A-7, A-12, A-13, A-14, A-16, A-17, A-19 and A-20.[6]  As such, Plaintiffs' motion to strike is denied as to these exhibits.

### B. Email Correspondence

The following exhibits include email correspondences attached to the motion for summary judgment: Exhibits P, Q, R, T, A-9, and A-11.  According to Defendants, these exhibits were all produced by Plaintiffs during discovery.  (Defendants' Response to Plaintiffs' Emergency Motion to Strike (#75) at 8).  As evidence of this, Defendants attach Exhibit A-28 to their response which is a letter from Plaintiffs' initial counsel, Jeffrey A. Dickerson ("Dickerson"), with a list of documents supplementing Plaintiffs' First Responses to Request for Production.

A proper foundation for authentication of a document can be established either by personal knowledge, or "any manner permitted by Federal Rule of Evidence 901(b) or 902." Orr, 285 F.3d at 774.  "A document can be authenticated [under Rule 901(b)(1)] by a witness who wrote it, signed it, used it, or saw others do so." Id. at 774 n.8. A document may also be authenticated under Rule 901(b)(4) by its "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." Id. Moreover, a document produced by a party in discovery is deemed authentic when offered by the party-opponent. Id. at 777 n.20 (citing Maljack Prods., Inc. v. Good-Times Home Video Corp., 81 F.3d 881, 889 n.12 (9th Cir. 1996)); see also 31 Federal Practice & Procedure: Evidence § 7105 at 39 ("Authentication can also be accomplished through judicial admissions such as . . . production of items in response to . . . [a] discovery request.")

Here, Exhibits A-9 and A-11 have a bate stamp indicating that they were produced by

---

[6]  It should be noted that the following deposition extracts do not contain the name of the deponent on them: Exhibits I, J, K, S, A-3, A-4, and A-12.  However, the name of the deponent is identified in the motion for summary judgment, and Defendants have submitted cover pages and reporter's certificates for each deposition.

1  Plaintiffs in this litigation.  As such, because they were offered by Plaintiffs in discovery,

2  Plaintiffs' motion to strike these exhibits is denied.  In addition, these emails are authenticated

3  by Schweickert in his Affidavit in Support of Plaintiffs' Opposition to Summary Judgment (#78-

4  2) at paragraph 13.  "[W]hen a document has been authenticated by a party, the requirement

5  of authenticity is satisfied as to that document with regards to all parties, subject to the right

6  of any party to present evidence to the ultimate fact-finder disputing its authenticity."  Orr, 285

7  F.3d at 776.

8      The other emails do not bear a bate stamp showing they were produced by Plaintiffs.

9  Exhibits P, Q and R are email correspondences between Plaintiffs' initial counsel Dickerson

10  and Mary Dugan at NSHE.  These email correspondences relate to Mary Lahren's position as

11  an independent contractor for the Field Camp.  Although they are missing a bate stamp, they

12  are identified in Dickerson's production of documents letter as: "E-mail exchanges between

13  Plaintiffs' counsel and Dugan pertaining to Lahren as consulted at the May 2006 field camp."

14  In addition, these emails are authenticated by Schweickert in his Affidavit in Support of

15  Plaintiff's Opposition to Summary Judgment (#78-2) at paragraph 25.

16      In addition to being authenticated by Plaintiffs, because these exhibits appear in the

17  form of email correspondence with email addresses listing Dickerson and Mary Dugan as the

18  sender and recipient, the exhibits can be authenticated under Rule 901(b)(4).  Their

19  appearance, contents and substance, taken in conjunction with circumstances, all support a

20  finding that the documents are what Defendants claim.  As such, the Court will not strike these

21  exhibits.

22      Finally, Plaintiffs challenge Exhibit T which is a campus announcement email regarding

23  the hiring of independent contractors who were formerly NSHE employees.  This document

24  is authenticated by Plaintiffs in Schweickert's affidavit.  Specifically, he states that the

25  document is a "true and correct copy of an announcement on NSHE's and UNR's policies" on

26  hiring independent contractors.   (Affidavit (#78-2) at 7 ¶ 26).   Because this email is

27  authenticated by Plaintiffs, the Court will not strike it.

28  ///

## C. Letters

Plaintiffs challenge the authenticity of two handwritten notes attached as Exhibits A-8 and A-10.  These exhibits are bate stamped as productions by Plaintiffs during discover. Specifically, they include the bate stamp numbers: P00512, P00513, P00514, and P00527. Because they were produced during discovery by Plaintiffs, they are deemed authentic when offered by Defendants.

In addition, these same documents are authenticated by Plaintiffs in their Opposition to Motion for Summary Judgment (#78).  Specifically, in Schweickert's Affidavit in Support of Plaintiff's Opposition to Summary Judgment (#78-2) he identifies these exhibits as "true and correct" copies of "correspondence to and from me regarding my request for payment of Mary Lahren." Id. at 4, ¶ 13.  The documents authenticated by Schweickert bear the identical bate stamps as the documents attached as exhibits to Defendants' motion for summary judgment.

Defendants also challenge Exhibit L which is a letter from John Frederick to Schweickert. Again, this document was produced by Plaintiffs during discovery and includes the bate stamp P00489. In addition, it is authenticated by Schweickert in his Affidavit (#78-2). According to Schweickert, this letter is "a true and correct copy of a Memorandum dated May 19, 2006 to me from John H. Frederick. I received this memorandum during the course of my business as a Professor at the University of Nevada, Reno, and have maintained a copy during the normal course of business." (Affidavit (#78-2) at 7 ¶ 23).

Because these documents were produced by Plaintiffs during discovery and authenticated by Plaintiffs in their opposition, the Court will not strike them as exhibits to Defendants' motion for summary judgment.

Plaintiffs also object to Exhibit B as being unauthenticated.  Exhibit B is a letter from NSHE's then general counsel Mark Ghan to Mary Lahren's attorney in 2002 during the sexual harassment charge.[7]  That letter states NSHE's position that the settlement agreement did not preclude Lahren from seeking employment at other NSHE institutions besides UNR.  It also

---

[7] At the time this letter was written in 2002, NSHE was known as University and Community College System of Nevada.

1  states that Lahren was not precluded by the settlement agreement from working as a
2  subcontractor on National Science Foundation or other research grants.  Although the letter
3  is on University letter head and signed by Mark Ghan, it has not been properly authenticated.
4  There is no bate stamp indicating that it was produced by Plaintiffs and it is not identified in
5  the list of documents produced in Defendants' Exhibit A-28.  Moreover, it has not been
6  authenticated by Plaintiffs in their opposition to the motion for summary judgment.  As such,
7  the Court will strike Exhibit B as unauthenticated.

8  **D. Court Order in Case No.: 3:06-cv-00197-LDG-RAM**

9  Plaintiffs argue that the Court should strike Defendants' Exhibit D which is a federal
10  district court order entered in Case No.: 3:06-cv-00197-LDG-RAM.  However, this document
11  is authenticated under Fed. R. Evid. 902(4) as a self-authenticating court filing.  As such, the
12  Court will not strike this exhibit.

13  **E. University Handbook**

14  Finally, Plaintiffs challenge two exhibits which include extracts from a University
15  Handbook: Exhibits H and A-15. To authenticate these documents, Defendants request leave
16  of Court to submit "the affidavit of Scott Wasserman, Chief Executive Officer of the Board of
17  Regents."  Scott Wasserman's affidavit is attached as Exhibit A-21 to the Defendants'
18  Response to Plaintiffs' Emergency Motion to Strike (#75).  According to this affidavit, the
19  exhibits are "true and correct copies" of the official version of the Board of Regent's handbook.
20  Based on this affidavit, the Court denies the motion to strike as to Exhibits H and A-15.

21  Based on the foregoing, the Court denies Plaintiffs' motion to strike as to all exhibits
22  except Exhibit B.  With leave of Court, Defendants are able to authenticate the deposition
23  extracts used in their motion for summary judgment.  The remaining exhibits were either
24  produced by Plaintiffs during discovery or authenticated by Plaintiffs in their opposition to
25  Defendants' motion for summary judgment.

26  ///
27  ///
28  ///

11

## II. Motion for Summary Judgment

### A. Legal Standard

Summary judgment "should be rendered forthwith if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986). The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Martinez v. City of Los Angeles, 141 F.3d 1373, 1378 (9th Cir. 1998).

Any dispute regarding a material issue of fact must be genuine—the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." Id. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'" and summary judgment is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." British Airways Board v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978). The evidence must be significantly probative, and cannot be merely colorable. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

In this matter, Defendants argue they are entitled to summary judgment on the claims asserted against them. Defendants state that Plaintiffs' claims are legally and factually without merit.

///

///

**B. Schweickert's due process and retaliation claim based on the evaluation process is barred by the doctrine of res judicata.**

In the Complaint, Schweickert alleges that the evaluation process at UNR is a violation of his constitutional and due process rights. See (Complaint (#1) at 6; Schweickert Deposition attached as Exhibit E to Motion for Summary Judgment (#46) at 55). Plaintiffs argue that this claim is barred by the doctrine of res judicata following the district court's order granting NSHE summary judgment in Case No.: 3:06-cv-00197. Plaintiffs, on the other hand, argue that neither issue nor claim preclusion apply to Schweickert's grievance claim because his evaluation occurred in 2006. (Opposition to Motion for Summary Judgment (#78) at 7). According to Plaintiffs, this Court already ruled that actions occurring in 2006 are not subject to res judicata. Id.

The doctrine of res judicata provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Holcombe v. Hosmer, 477 F.3d 1094, 1097 (9th Cir. 2007)(quoting Allen v. McCurry, 449 U.S. 90, 93 (1980)). "Claim preclusion is a broad doctrine that bars bringing claims that were previously litigated as well as some claims that were never before adjudicated." Holcombe, 477 F.3d at 1097 (quoting Clements v. Airport Auth. of Washoe County, 69 F.3d 321, 327 (9th Cir. 1995)).

The doctrine applies if the earlier suit "(1) involved the same 'claim' or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies." Mpoyo v. Litton Electro-Optical Sys., 430 F.3d 985, 987 (9th Cir. 2005)(quoting Sidhu v. Flecto Co. Inc., 279 F.3d 896, 900 (9th Cir. 2002)). To determine whether the two suits involve the same claim or cause of action, the court should consider: "(1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions." Id. at 987 (citing Chao v. A-One med. Servs., Inc., 346 F.3d 908, 921 (9th Cir. 2003)).

1   Here, the issue is not whether Schweickert's grievance claim was litigated in
2   Lahren/Schweickert I or Lahren Schweickert II. Rather, it deals with a case filed on April 8,
3   2006 and known as "Hussein V." See Case No.: 3:06-cv-00197-LDG-RAM. In that case,
4   Schweickert and two other plaintiffs filed a case against NSHE and several defendants
5   alleging that certain changes to the procedure for reviewing faculty evaluations violated their
6   constitutional rights. The court in that case entered an order (#98) on September 25, 2008,
7   granting NSHE and the defendants summary judgment.

8   Upon review of the claims asserted in that case, Schweickert's evaluation and
9   grievance procedure claim asserted in this case is barred by the doctrine of res judicata.
10  Schweickert and NSHE were both parties to the previous case. That court reached a final
11  judgment on the merits holding that Schweickert could not maintain his constitutional claims
12  in relation to the grievance procedure  - the identical claim Schweickert made in this case.
13  See Order (#98) in Case No.: 3:06-cv-00197-LDG-RAM. Specifically, that court held that
14  "plaintiffs have not offered any law suggesting that they have a due process right to any
15  specific type of review procedure." Id. Thus, according to the court, "they cannot maintain
16  their due process claim solely on the basis that the review procedure changed." Id. In
17  addition, the court held that "plaintiffs have not offered any law suggesting that the 'due
18  process' afforded by peer review violated constitutional requirements." Id.

19  Schweickert has alleged the same claim in this case - that the change in the evaluation
20  procedure violated his constitutional rights and was done in retaliation for his participation in
21  Lahren's sexual harassment charge. However, the constitutionality of that issue has already
22  been determined in Hussein V. As such, a determination by this Court on that issue would
23  destroy or impair the "rights or interests established in the prior judgment." See Mpoyo, 430
24  F.3d at 987.

25  Moreover, Plaintiffs' argument that this Court already determined what issues are
26  barred by claim preclusion in its Order (#25) is without merit on this issue. That Order (#25)
27  was entered several months before the court in Hussein V made its final determination. There
28  had been no decision on the merits in that case when the Court entered Order (#25). Now,

14

the court in Hussein V has entered a final order, and that order bars the relitigation of Schweickert's evaluation claim.

Based on the foregoing, Plaintiffs are entitled to summary judgment on Schweickert's claim that the grievance procedure in place at NSHE violates his constitutional rights. That issue is barred by the doctrine of res judicata and Plaintiffs are not entitled to relitigate that issue in front of this Court.

**C. Plaintiffs have failed to provide any evidence that Defendants violated 42 U.S.C. § 1985(2).**

In their Complaint, Plaintiffs assert that they "are parties/witnesses in their litigation, and have been interfered with by threats and intimidation" in violation of 42 U.S.C. § 1985. (Complaint (#1) at 8). According to Defendants, they are entitled to summary judgment on this claim because it "is wholly without merit." (Motion for Summary Judgment (#46) at 14). Defendants state that "Plaintiffs have offered no evidence to establish that defendants in any way threatened or intimidated plaintiffs in their capacity as parties or witnesses for each other in this litigation." Id. "Nor is there any allegation that defendants have intimidated any of plaintiffs' witnesses." Id. In response, Plaintiffs assert that they have a history of litigation against NSHE and that all of the retaliatory conduct they have alleged relates to their 42 U.S.C. § 1985 claim - specifically NSHE's involvement to try to stop Schweickert from hiring Lahren in the Field Camp. (Opposition to Motion for Summary Judgment (#78) at 26).

42 U.S.C. § 1985(2) provides that it is unlawful for "two or more persons" to "conspire to deter, by force, intimidation, or threat" any party or witness in any court of the United States "from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully." According to the Ninth Circuit, in order to establish a claim under section 1985(2), the plaintiff must show: "(1) a conspiracy between two or more persons, (2) to deter a witness by force, intimidation or threat from attending court or testifying freely in any pending matter, which (3) results in injury to the plaintiff." David v. U.S., 820 F.2d 1038, 1040 (9th Cir. 1987). "A claimant need not suffer monetary damages to have an injury cognizable under section 1985(2)." Rutledge v. Ariz. Bd. of Regents, 859 F.2d 732, 735 (9th Cir. 1988). "Rather, a claimant must show that the conspiracy hampered the claimant's ability to present an effective

15

1    case in federal court." Id.

2    Here, Defendants are entitled to summary judgment on Plaintiffs' section 1985(2) claim.

3    Plaintiffs have not provided any evidence that there was a conspiracy to hamper their ability

4    to present an effective case in federal court.  As acknowledged by Plaintiffs,  they "have a

5    history of litigation against the University," and this is the third case pending between these

6    parties relating to acts arising from Lahren's sexual harassment charge in 2002.  Even if

7    Plaintiffs could show they were retaliated against for bringing this lawsuit, they have failed to

8    show that such retaliation hampered their ability to present an effective case.  See Rutledge,

9    859 F.2d at 735 (holding that even if witnesses are intimidated, such intimidation does not

10   violate section 1985(2) if it has no effect on a party's ability to present a case in federal court).

11   Thus, the Court grants Defendants' motion for summary judgment on the section

12   1985(2) claim asserted against them.

13   **D. Defendants are entitled to summary judgment on the retaliation claims relating to Lahren's work at the Field Camp.**

14   The gravamen of Plaintiffs' Complaint in this action relates to alleged retaliatory conduct

15   that occurred when Schweickert attempted to hire Lahren to work at a geology field camp

16   during the summer of 2006.  In May 2006, Schweickert appointed Lahren to the field camp as

17   a consultant. (Complaint (#1) at 2). According to the Complaint, Schweickert "proceeded to

18   have the relevant paperwork submitted" but discovered a problem based on the language of

19   the settlement agreement entered into by Lahren in 2002.  Id.  The Settlement Agreement

20   precluded Lahren from ever applying for a position as an employee at UNR.  (Motion for

21   Summary Judgment (#46) at 3).  However, Lahren was not precluded from providing

22   consulting services to Schweickert on his research grants.  See (Lahren Deposition attached

23   as Exhibit C to Motion for Summary Judgment (#46) at 6).

24   Schweickert had given the paperwork for Lahren's payment for work at the field camp

25   to the geology department secretary Ingrid Ramos ("Ramos").  See Schweickert Deposition

26   at 43 attached as Exhibit 1 to Opposition to Motion for Summary Judgment (#78-3). According

27   to Schweickert, Ramos stated that there was a problem paying Lahren for the field camp.  Id.

28   In her deposition, Ramos stated that she "remembered something" about Lahren not being

16

permitted to work at UNR. See Ramos Deposition at 17-18 attached as Exhibit I to Motion for

Summary Judgment (#46-2). Ramos was unsure how to proceed with processing Lahren's

payment so she called Melissa Bell in the Dean's Office to ask if Lahren could be employed

at UNR. Id. According to Ramos, Melissa Bell confirmed that Lahren could not be employed

by UNR.[8] Id. After consulting with Melissa Bell, Ramos stated that she called Vice Provost

Jannet Vreeland ("Vreeland") to determine how to proceed. See Ramos Deposition at 19

attached as Exhibit J to Motion for Summary Judgment (#46-3). According to Ramos,

Vreeland stated that she would take care of the matter. Id.

After Vreeland was informed of the situation, she contacted Provost John Frederick

("Frederick") regarding the matter. See Deposition of John Frederick at 12 attached as Exhibit

K to Motion for Summary Judgment (#46-3). Frederick believed that employing Lahren at the

field camp would be a violation of the settlement agreement the parties had entered into in

2002. Id. As a result, Frederick sent Schweickert a memo regarding Lahren's potential

employment. See Memorandum attached as Exhibit L to Motion for Summary Judgment (#46-

3). That memo stated that it had come to Frederick's attention that Schweickert "may be

contemplating hiring Dr. Mary Lahren as an LOA during the summer term. I am compelled to

remind you that Dr. Lahren signed an agreement that she would not be an employee nor seek

employment in the future with this university."[9] Id. Frederick concluded by stating: "In light of

this agreement, please insure that no paperwork is generated that would in any way result in

the employment of Dr. Lahren by the university." Id. According to Schweickert, he was not

necessarily attempting to have the University employ Lahren under an LOA. See Schweickert

---

[8] Plaintiffs assert that the dean's office involvement in this procedure is evidence of Defendants' conspiracy to retaliate against them. According to Schweickert, the leap of Lahren's name from the department secretary to the dean's office was not a coincidence. See Schweickert Deposition at 51 attached as Exhibit 1 to Opposition to Motion to Dismiss (#78-3). Schweickert stated that: "Standard procedure, as long as I've been a faculty member in the department, is that when the field camp director lists names of people that we intend to pay for their activities in a field camp, it's a departmental matter." Id. However, Schweickert conceded that he was not aware if anyone else that went through the process had a settlement agreement with UNR barring their future employment with the University. Id.

[9] LOA stands for "Letter of Appointment." See University Handbook at Title 4, Chapter 3, page 32 attached as Exhibit H to Motion for Summary Judgment (#46-2). A faculty member hired through an LOA is considered an employee. Id.

1    Deposition at 36 attached as Exhibit M to Motion for Summary Judgment (#46-3). Schweickert

2    stated that he gave the names of the people he wanted to use at the field camp to the

3    department secretary to process for payment out "of the field camp funds."[10] Id.

4          Following Frederick's letter to Schweickert, Plaintiffs' counsel Dickerson sent an email

5    to Mary Dugan ("Dugan") at NSHE regarding the situation. See Exhibit P attached to Motion

6    for Summary Judgment (#46-3). In the email, Dickerson stated that Frederick was preventing

7    Lahren from consulting with Schweickert at the field camp. Id. According to Dickerson, "[t]his

8    is not an LOA request, and she is not applying for a position with UNR or becoming an

9    employee of UNR."  Id.  Rather, Dickerson stated that "a consultant is an independent

10   contractor, and does not hold a position and is not an employee, by definition."  Id.  In

11   response, Dugan stated that "[i]f this is an independent contractor situation, then the usual

12   independent contractor process should be used." Id. Dugan then stated that the independent

13   contractor forms were available on the university website. Id.

14         On June 12, 2006, a few days after the foregoing emails between Dickerson and

15   Dugan, a campus-wide email announcement was received by all UNR faculty regarding the

16   hiring of independent contractors by NSHE and UNR. See Exhibit T attached to Motion for

17   Summary Judgment (#46-3). According to the email, "[t]he purpose of the announcement is

18   to clarify NSHE and UNR policies and procedures on hiring independent contractors." Id. The

19   email stated that an independent contractor form must be completed and submitted to the

20   Business and Finance Office for review and approval.  The email provided that the hiring

21   departments are required to provide complete information and forms, and payments "cannot

22   be processed based on incomplete or improper forms."  Id.  The announcement also

23   discussed what would happen if there was a wrongful classification as an employee or

24   independent contractor, and the common-law IRS tests for determining independent contractor

25   status. Id.

26   _____

27         [10] Schweickert later testified that he didn't want to "hire" Lahren for the field camp, but have
     her "work as a consultant as she had previously." See Schweickert Deposition at p. 22 attached as
28   Exhibit N to Motion for Summary Judgment (#46-3). However, Schweickert noted that Lahren had
     never been a "consultant" at the field camp before. Id. Rather, that was a term used for her position
     when she worked on his research grants. Id.

1    Despite Dickerson's email that Lahren was attempting to be hired as an independent
2  contractor, upon reviewing the independent contractor forms required by the University,
3  Lahren and Schweickert decided not to fill them out. According to Schweickert, he "examined
4  the independent-contractor forms and reviewed all that was going on and decided that that's
5  not a viable option." See Schweickert Deposition at 79 attached as Exhibit 1 to Opposition to
6  Motion for Summary Judgment (#78-3).   Lahren also testified that she looked at the
7  independent contractor forms and did not feel she would qualify for that status. See Lahren
8  Deposition at p. 15 attached at Exhibit 2 to Opposition for Motion for Summary Judgment (#78-
9  3). According to Lahren, she felt that if she filled out the independent contractor form, she
10  could be disqualified "on any number of the 19 questions right off the bat." Id. Lahren stated
11  that she felt the independent contractor form "was a trap." Id. at p. 34.

12    Despite the situation, Schweickert had Lahren work at the field camp. At his deposition,
13  Schweickert stated that he figured they would "work out" the payment later. See Schweickert
14  Deposition at p. 79 attached as Exhibit 1 to Opposition to Motion for Summary Judgment (#78-
15  3).   After the field camp was completed, in order to pay Lahren, Schweickert filled out an
16  invoice and gave it to Ramos. Id.; see also Exhibit A-8 attached to Motion for Summary
17  Judgment (#46-4). According to the invoice submitted by Schweickert he was attempting to
18  pay Lahren $2,800 for "geological consulting - field camp." Id. In an email from Melanie Lever
19  ("Lever"), Lever informed Schweickert that she was attempting to process the invoice but that
20  she was "unable to release the order because of account issues." Id. According to Lever, the
21  account number Schweickert gave her was "invalid and there is no expense budget line." Id.
22  As a result, Lever asked Schweickert to double check the account number.  Schweickert then
23  submitted a second invoice with a different account number. See Exhibit A-10 attached to
24  Motion for Summary Judgment (#46-5). However, Lever said she was still not able to process
25  the request because "there are not enough funds in the account provided." Id. As such,
26  Lahren was not paid for her work at the field camp.[11]

27

28    [11]   Defendants argue that these invoices were an attempt by Schweickert to ignore the
University's requirement that Lahren fill out an independent contractor form. (Motion for Summary
Judgment (#46) at 9). In this regard, Defendants state that this shows that Schweickert attempted to have

Plaintiffs assert that the foregoing evidences a retaliatory animus toward them based on the sexual harassment charge of 2002.  Specifically, Plaintiffs argue that the timing between the events "allows an inference that" the policy changes at issue with independent contractors "was made at least in part to block Lahren's field camp endeavor."  See Schweickert Deposition at 83 attached as Exhibit 1 to Opposition to Motion for Summary Judgment (#78-3). Plaintiffs further assert that a "toxic, hostile work environment existed at UNR." (Opposition to Motion for Summary Judgment (#78) at 13). Plaintiffs allege that Lahren was singled out from all other former NSHE employees and that her name was flagged. Id. In addition, Plaintiffs assert that the independent contractor agreement was a "fiction" designed to prevent Lahren from working at the field camp. Id. at 16.

Based on the foregoing, Plaintiffs assert that Defendants violated their constitutional rights and interfered with their prospective contractual and business relationships.

### 1. Interference with liberty interest to pursue occupation and denial of that right without due process

Plaintiffs allege that the foregoing acts of Defendants violated Plaintiffs' "liberty interest in pursuing her occupation" and intentionally denied her of that interest "without due process." (Complaint (#1) at 9). Defendants argue that they are entitled to summary judgment on this claim because it is legally and factually without merit. First, NSHE argues that it is entitled to immunity under the Eleventh Amendment. (Motion for Summary Judgment (#46) at 18). Second, Defendants argue that "Lahren has no protected property, liberty or academic freedom interest in working with Schweickert at the University field camp in a subcontractor capacity." Id. In response, Plaintiffs concede that the State is immune from section 1983 liability "under the Eleventh Amendment," but the "individuals acting in their official capacity are not." (Opposition to Defendants' Motion for Summary Judgment (#78) at 9).

By reason of its sovereignty, a state ordinarily cannot be sued, without its consent, by an individual in a federal court. Principality of Monaco v. State of Miss., 292 U.S. 313, 321,

---

Lahren paid through his research grants as a consultant as he had done with her in the past. However, Defendants assert that "Schweickert knew . . . that the Field Camp funds came from student tuition, not his research grants." Id. According to Defendants, a different payment process needed to be followed when paying an individual for work at the field camp versus work under a research grant.

1    54 S.Ct. 745 (1934). "Nevada has explicitly refused to waive its immunity to suit under the

2    eleventh amendment." O'Connor v. State of Nev., 686 F.2d 749, 750 (9th Cir. 1982)(citing

3    NRS 41.031(3)). According to the Ninth Circuit, "Nevada's retention of 'Eleventh Amendment

4    immunity' bars *all* actions against Nevada in federal court, including those brought by Nevada

5    residents."[12] Carey v. Nev. Gaming Control Bd., 279 F.3d 873, 877 (9th Cir. 2002).

6         "There are, however, exceptions to Eleventh Amendment immunity." Pittman v.

7    Oregon, Employment Dept., 509 F.3d 1065, 1071 (9th Cir. 2007). "When acting pursuant to

8    its authority under section 5 of the Fourteenth Amendment, Congress can abrogate the

9    sovereign immunity of the states." Id. "Sovereign immunity also does not bar suits for

10   prospective injunctive relief against individual state officials acting in their official capacity."

11   Id. "Moreover, a state may waive its Eleventh Amendment immunity" in certain circumstances.

12   Id.

13        Congress has not abrogated the sovereign immunity of the states under section 1983.

14   Pittman, 509 F.3d at 1071 (stating that "courts have held that states enjoy sovereign immunity

15   from suits" brought under section 1983). In Quern v. Jordan, the United States Supreme Court

16   made clear that section 1983 "does not explicitly and by clear language indicate on its face an

17   intent to sweep away immunity of the States" as required for an abrogation of sovereign

18   immunity. 440 U.S. 332, 345, 99 S.Ct. 1139 (1979). As such, NSHE is entitled to summary

19   judgment on the section 1983 claim asserted against it based on Eleventh Amendment

20   immunity.

21        Plaintiffs have also filed suit against the individual defendants in their personal

22   capacities as well. In their Opposition to Motion for Summary Judgment, Plaintiffs assert that

23   "while Nevada has expressly provided its state agencies with immunity for discretionary acts,

24   that immunity does not apply when the acts are taken in bad faith." (Opposition to Motion for

25   Summary Judgment (#78) at 9-10). Plaintiffs argue that the acts of the individual Defendants

26

27        [12] NRS 41.031 does waive "sovereign immunity under some circumstances," but federal courts
     "have assumed that Nevada's waiver of sovereign immunity 'only gives Nevada's consent to suits in its

28   own courts.'" Carey, 279 F.3d at 877. As such, according to the Ninth Circuit, "every action in which
     an individual successfully sued the State of Nevada under section 41.031 was litigated in a Nevada state
     court." Id.

1 were retaliatory in nature and "taken in bad faith, thereby exposing the state actors to civil
2 liability." Id.

3    The Eleventh Amendment prohibits damage actions against state officials "in their
4 *official* capacities." Romano v. Bible, 169 F.3d 1182, 1185 (9th Cir. 1999). "The amendment
5 prohibits actions for damages against an 'official's office,' that is, actions that are in reality suits
6 against the state itself." Id. "However, the Eleventh Amendment does not bar suits against
7 state officials for prospective relief." Stivers v. Pierce, 71 F.3d 732, 749 (9th Cir. 1995).

8    Here, Defendants argue that they cannot be liable in their personal capacities because
9 they have not violated Plaintiffs' constitutional rights. (Motion for Summary Judgment (#46)
10 at 18). In this regard, Plaintiffs assert that "Lahren had no protected property, liberty or
11 academic freedom interest in working with Schweickert at the university Field Camp in a
12 subcontractor capacity." Id. Moreover, Defendants argue that Lahren was only required to
13 fill out an independent contractor agreement because she had entered into a settlement
14 agreement "which precluded her from becoming a university employee." Id. Defendants were
15 attempting to ensure that the settlement agreement was not breached when Lahren went to
16 work at the field camp. Finally, Defendants note that Lahren chose not to fill out the
17 independent contractor form. Id. at 19. As a result, Defendants could not have violated her
18 constitutional due process rights because she "refused to take the necessary steps to
19 establish a subcontractor status." Id.

20    Lahren argues that the University officials deprived her of due process when they
21 required her to fill out an independent contractor form in order to participate in the field school.
22 "The Fourteenth Amendment protects against governmental deprivations of 'life, liberty, or
23 property' without due process of law." Guzman v. Shewry, 552 F.3d 941, 953 (9th Cir.
24 2009)(quoting U.S. Const. amend. XIV). To state a cognizable due process claim, Plaintiffs
25 must have a "recognized liberty or property interest at stake." Id. This must be "more than
26 a unilateral expectation." Stanley v. Gonzales, 476 F.3d 653, 660 (9th Cir. 2007). Rather,
27 Plaintiffs must "have a legitimate claim of entitlement." Id. (citing Board of Regents of State
28 Colleges v. Roth, 408 U.S. 564, 569-70, 92 S.Ct. 2701 (1972). In Roth, the United States

22

1  Supreme Court held that an untenured professor did not have a property interest in being
2  rehired by state university, absent state statute or university policy indicating to the contrary.
3  408 U.S. at 575. That Court stated that "[i]t stretches the concept too far to suggest that  a
4  person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as
5  before to seek another."[13]  Id. Rather, "[t]o have a property interest in a benefit, a person
6  clearly must have more than an abstract need or desire for it.  He must have more than a
7  unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Id.
8  at 577. "It is a purpose of the ancient institution of property to protect those claims upon which
9  people rely in their daily lives, reliance that must not be arbitrarily undermined." Id.

10        In this matter, Lahren has not established that she had a constitutional right to work as
11  a consultant for the 2006 summer field camp with Schweickert.  Lahren was aware that she
12  was not allowed to be a University employee under the terms of the settlement agreement.[14]
13  As such, in order to work with Schweickert, Lahren knew that she would either have to be
14  classified as a consultant or an independent contractor.  Although Lahren had worked for
15  Schweickert as a consultant before, that was for work performed on a research project and
16  not at the field school.  Because she had never worked as a consultant at the field school,
17  Lahren has not established that she had a "legitimate claim of entitlement" to that position.
18  Rather, it appears that Lahren had a "unilateral expectation" that she could work as a
19  consultant at the field school and such an expectation is not sufficient to create a due process
20  right. Moreover, Lahren had the opportunity to apply to work as an independent contractor at
21  the field school but chose not to fill out that agreement because she believed it was a "trap."
22  However, besides arguing that she could be disqualified under the independent contractor
23  form, Lahren has not provided any evidence that the form was illegal or that the University did

24
25
26

27  [13]  That Court also held that whatever may be a teacher's right of free speech, interest in holding
     a teaching job at a state university, simpliciter, is not itself a free speech interest. Id.

28  [14]   The legality of the settlement agreement and its constitutionality was upheld in
     Lahren/Schweickert I.

23

1   not have a right to require her to fill it out.[15]  As such, based on the foregoing, the individual

2   defendants cannot be liable under section 1983 because they did not deprive Plaintiffs of any

3   property or liberty interest without due process of law.  Thus, they are entitled to summary

4   judgment on this claim.

5               **2.  Interference with Contract and Prospective Economic Advantage**

6         In addition to the foregoing, Plaintiffs argue that the "newly restrictive procedures in

7   hiring independent contractors" prevented Lahren from serving as a consultant at the field

8   camp and interfered with Plaintiffs' "prospective economic advantage and/or contractual

9   relationships by wrongful means." (Complaint (#1) at 8).

10        Defendants argue that they are entitled to summary judgment on this claim because

11  the University was the contracting party with respect to all individuals hired to teach at the field

12  camp.[16]  (Motion to Dismiss (#46) at 15).  As such, the University, as a party, could not

13  tortiously interfere with its own contract or prospective business advantages.  In addition,

14  Defendants argue that the individual Defendants cannot be liable for a conspiracy to interfere

15  with contract and prospective economic advantage because there was no intent to accomplish

16  an unlawful objective. Id. at 16.  In this regard, Defendants state that all they did was require

17  Lahren to submit an independent contractor form to determine her eligibility to work at the field

18  school.[17] Id.

19        In response, Plaintiffs concede that NSHE cannot be liable for interference with its own

20  contract.  (Opposition to Motion for Summary Judgment (#78) at 26).  However, Plaintiffs

21

22        [15] Lahren argues that NSHE paid "at least 75 non-UNR employees . . . through purchase orders
    without being Independent Contractors." (Opposition to Motion for Summary Judgment (#78) at 12).
23  However, Lahren does not identify if these individuals were being employed at the field camp in an
    instructor position.  As noted by Defendants, the ability to pay an individual with a purchase order
24  related to the source of funds. Lahren had been paid through a purchase order to work on research when
    the funds came from research grants.  But she could not follow the same process for the field school
25  where the funds game from student tuition.

26        [16] According to Defendants, "[t]he University, not Schweickert, was the appointing authority
    with respect to faculty hired to teach at the [field camp]; Schweickert was merely an UNR employee
27  designated to manage the [field camp] as director." (Motion to Dismiss (#46)).

28        [17] Defendants note that Lahren's attorney at the time, Dickerson, classified Lahren's position at
    the field camp as an "independent contractor" when he email Dugan to argue that Lahren would not be
    classified as an "employee."

24

1  argue that the individual Defendants are still liable because they have been "sued in their

2  individual capacities for acting outside the scope of their employment." Id. In addition,

3  Plaintiffs assert that the individual Defendants were engaged in a conspiracy by forcing Lahren

4  to submit an independent contractor form in order to work at the field camp.

5        As noted in the foregoing, Plaintiffs assert that Defendants engaged in a conspiracy to

6  interfere with Plaintiffs' prospective business advantage. To establish the tort of interference

7  with prospective business advantage, a plaintiff must establish: "(1) a prospective contractual

8  relationship between the plaintiff and a third party; (2) the defendant's knowledge of this

9  prospective contractual relationship; (3) the intent to harm the plaintiff by preventing the

10  relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm

11  to the plaintiff as a result of defendant's conduct." Consolidated Generator-Nevada v.

12  Cummins Engine Co., Inc., 114 Nev. 1304, 1311, 971 P.2d 1251 (Nev. 1998)(quoting Leavitt

13  v. Leisure Sports Inc., 103 Nev. 81, 88, 734 P.2d 1221, 1225 (Nev. 1987). To establish a civil

14  conspiracy, a plaintiff must show "a combination of two or more persons who, by some

15  concerted action, intend to accomplish some unlawful objective for the purpose of harming

16  another which results in damage." Collins v. Union Federal Sav. & Loan Ass'n, 99 Nev. 284,

17  303, 662 P.2d 610 (Nev. 1983).

18        In this matter, Defendants are entitled to an order granting summary judgment on this

19  claim. Plaintiffs have failed to provide evidence that Defendants conspired for "some unlawful

20  objective," when they required Lahren to submit an independent contractor form to work at the

21  field camp. As noted in the foregoing, Plaintiffs have not provided any evidence that such a

22  requirement violated their constitutional rights or was against the law. Moreover, Plaintiffs

23  have failed to allege a claim for interference with prospective business advantage because

24  they have not shown that Defendants actions were not privileged or justified. In this regard,

25  Defendants have provided evidence that they required Lahren to fill out an independent

26  contractor form after Lahren's attorney informed Dugan that Lahren was not attempting to

27  ///

28  ///

25

1    work at the field camp as an "employee," but rather as an independent contractor. Based on

2    this, Defendants were justified in requiring Lahren to conform with the University rules

3    governing the hiring of independent contractors.

**CONCLUSION**

5       For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiffs' Motion to Strike

6    (#69) is GRANTED IN PART and DENIED IN PART. The motion is denied as to all exhibits

7    except Exhibit B. Exhibit B is stricken for failure to authenticate.

8       It is FURTHER ORDERED that Defendants' Motion for Summary Judgment (#46) is

9    GRANTED.

10       The Clerk of the Court should enter judgment accordingly.

11       IT IS SO ORDERED.

12       Dated this 3RD day of March, 2010.

14                     United States District Judge

26